IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA MARY MATIYA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) No. 13 C 7763 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Tina Mary Matiya ("Matiya") seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying her claim for Social Security Disability Insurance benefits under Title II and XVI of the Social Security Act. Matiya filed an "administrative complaint for judicial review," (Dkt. No. 1), an amended complaint (Dkt. No. 10 ("Am. Compl.")) seeking the same relief, and an opening brief (Dkt. No. 17) requesting that the Commissioner's decision be set aside and remanded. The Commissioner filed a motion for summary judgment (Dkt. No. 26) requesting that the Commissioner's decision be affirmed. For the reasons set forth below, the Commissioner's motion for summary judgment (Dkt. No. 26) is granted and the Commissioner's final decision is affirmed.

---

[1] Matiya originally sued Kathleen Sebelius in her official capacity as the Secretary of the Department of Health and Human Services ("HHS"). (Dkt. Nos. 1, 10.) Counsel for both parties subsequently replaced Sebelius as the defendant in the caption of their motions with Carolyn Colvin, Acting Commissioner of Social Security, without providing any notice to the court or reason for the change in defendant. (*See* Dkt. Nos. 19, 26, 28.) Because Sebelius is no longer the Secretary of HHS, and because the court believes Colvin to be the proper defendant, the court treats Matiya's complaint as properly filed against Colvin in her official capacity.

BACKGROUND

On January 7, 2007, Matiya received a "fully favorable" decision from Administrative Law Judge Kenneth Stewart ("ALJ Stewart") finding Matiya disabled from November 23, 2004, when she injured her knee at her work as a bartender, until December 1, 2006, when her physical therapy ended. (*See* R. at 69.)[2] On April 27, 2010, Matiya filed another Title II application for a period of disability and disability insurance. (*Id.* at 15.) She also filed a Title XVI application for supplemental security income on the same date. (*Id.*) In both applications, Matiya alleged disability beginning on January 14, 2010. In addition to ongoing issues with both of her knees, Matiya allegedly suffered from chronic obstructive pulmonary disease, obesity, and degenerative disc disease of the lumbar and cervical spine. (*Id.* at 17.) The Administrative Law Judge denied Matiya's claims initially on July 27, 2010, and upon reconsideration on January 7, 2011. (*Id.* at 15.) Matiya then requested a hearing, which was held on May 4, 2011 by Administrative Law Judge Karen Sanyon ("ALJ Sanyon"). (*Id.*)

On June 5, 2012, ALJ Sanyon denied Matiya's application for a period of disability and disability insurance benefits. (R. at 15.) Matiya requested review of ALJ Sanyon's decision, and the Social Security Administration's Appeals Council denied her request on August 28, 2011, (*id.* at 1), making ALJ Sanyon's June 5, 2012 ruling the final decision of the Commissioner. *See Villano* v. *Astrue*, 556 F.3d 558, 561 (7th Cir. 2009). Matiya filed her complaint in this court on October 30, 2013. (Dkt. No. 1.) On August 4, 2014, the Commissioner filed a motion for summary judgment. (Dkt. No. 26.) On August 18, 2014, Matiya filed a response to the Commissioner's motion for summary judgment. (Dkt. No. 28.) The Commissioner did not file a reply by the court's January 14, 2015 deadline, opting instead to rely on the memorandum (Dkt.

---

[2] Citations to the "Record" or "R" refer to "Certified Copy of Administrative Record" filed at Dkt. No. 15 in this case.

No. 26) in support of her motion (Dkt. No. 26) for summary judgment. (*See* Dkt. No. 30.) The court considers the Commissioner's motion for summary judgment (Dkt. No. 26) to be fully briefed and ripe for ruling.

## STANDARD OF REVIEW

The court performs a *de novo* review of the ALJ's legal conclusions, while giving deference to the ALJ's factual determinations. *Jones* v. *Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). In other words, the court "will uphold the Commissioner's decisions so long as the ALJ applied the correct legal standard and substantial evidence supported the decision." *Castile* v. *Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *see also* 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jones*, 623 F.3d at 1160 (quoting *Skinner* v. *Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). When reviewing for substantial evidence, the court does not substitute its own judgment for that of the ALJ by re-weighing evidence or making credibility determinations. *Skinner*, 478 F.3d at 841. The court does, however, require that the ALJ adequately explain his decision by building "a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones*, 623 F.3d at 1160 (quoting *Getch* v. *Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

## ANALYSIS

The Social Security Administration regulations require an ALJ to follow a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The five-step process requires the ALJ to ask:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant

can[not] perform [her] past work; and (5) whether the claimant is capable of
performing work in the national economy.

*Simila* v. *Astrue*, 573 F.3d 503 (7th Cir. 2009) (quoting *Clifford* v. *Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe ex rel. Taylor* v. *Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). A negative conclusion at any step, except for step three, stops the inquiry and precludes a finding of disability. 20 C.F.R. § 404.1520; *Stein* v. *Sullivan*, 892 F.2d 43, 44 (7th Cir. 1990). In steps four and five, to determine whether the claimant is able to perform her past work or is capable of performing other work, the ALJ assesses the claimant's residual functioning capacity ("RFC"). *Simila*, 573 F.3d at 513 (citations omitted). A claimant's RFC is "the most [she] can still do despite [her] limitations," and the ALJ determines a claimant's RFC based on the claimant's impairments and the evidence in the record. *Id.* (quoting 20 C.F.R. 404.1545(a), 416.945(a)).

Here, ALJ Sanyon found at step one that Matiya had been unemployed since January 14, 2010, the alleged onset date of her disabilities, and at step two that she suffered from the severe impairments of chronic obstructive pulmonary disease, status post right knee replacement, obesity, status post left knee arthroscopic surgery, and degenerative disc disease of the lumbar and cervical spine. (R. at 17.) At step three, ALJ Sanyon determined that Matiya's impairments did not meet the requirements of any of the regulatory listings. (*Id.* at 17-18.) ALJ Sanyon then found that Matiya retained an RFC "to perform light work involving: no climbing ladders, ropes, or scaffolding; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no exposure to heights or hazards such as dangerous, moving machinery; and no concentrated exposure to humidity, temperature extremes, or respiratory irritants." (*Id.* at 19.) Accordingly, at step four, ALJ Sanyon concluded that Matiya could perform her past work as a

check-out cashier. (*Id.* at 21.) Alternatively, at step five, considering Matiya's age, education, and past work experience, ALJ Sanyon found Matiya would be capable of performing work in the national economy as a "cashier II," subject to the limitations identified in ALJ Sanyon's RFC finding. (*Id.* at 21.)

Matiya intitially contends that ALJ Sanyon erred by failing to articulate why "she was not considering" ALJ Stewart's favorable closed period of disability decision in January 2007. (Dkt. No. 17 at 5-6.) Matiya cites no legal authority for her argument that an ALJ must discuss her reasons for accepting or rejecting a previous ALJ's decision, and Matiya likewise provides no explanation as to how ALJ Sanyon's consideration of ALJ Stewart's earlier determination would have altered her analysis. *See Skarbek* v. *Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding ALJ's failure to address obesity evidence was harmless error given claimant's failure to explain how the evidence would have mattered). ALJ Sanyon was not, in fact, obligated to consider ALJ Stewart's decision because it was not "evidence" in support of Matiya's pending disability claim; it concerned a prior period, three years before Matiya's alleged disability began on January 14, 2010. If anything, ALJ Stewart's decision to close Matiya's first disability period on December 1, 2006 supports an inference that Matiya's knee issues—which ALJ Sanyon found had not worsened since 2006 (R. at 20)—were insufficient to support a finding of disability after December 1, 2006. ALJ Sanyon's thorough consideration of the objective medical evidence and Matiya's credible limitations was sufficient. Her decision not to discuss (or consider) ALJ Stewart's closed period of disability decision three years earlier is not reversible error.

Matiya next argues that ALJ Sanyon erred by omitting any discussion of the vocational expert's testimony that a person with Matiya's vocational profile would not be able to hold a job, including a cashier's job, if the person was "off task 30 percent of the time" and had to miss

three days of work per month due to pain and fatigue. (Dkt. No. 17 at 5-6.) In discussing the vocational expert's testimony, ALJ Sanyon stated:

> The vocational expert testified that the claimant had past work as: a bartender (semiskilled; light per the Dictionary of Occupational Titles (DOT) and medium as performed); and a check-out cashier (semiskilled; light per the DOT and heavy as performed). The expert further testified that the claimant, subject to the limitations identified in the residual functional capacity finding, could perform her past work as a check-out cashier, as that job was normally performed in the economy. I agree.

(R. at 21.) ALJ Sanyon did not address two hypotheticals she posed to the vocational expert during the May 4, 2011 hearing. First, ALJ Sanyon inquired whether a person of Matiya's vocational profile would be able to hold Matiya's past work as a cashier or any other job in the economy if she were "off task 30 percent of the time" due to her pain and fatigue. (R. at 57-58.) The vocational expert answered "no . . . because production standards couldn't be met as well as reliability at that level of off-task." (*Id.* at 58.) Second, ALJ Sanyon stated "[Matiya] indicated also kind of staying in the house a lot," and inquired "[i]f she had to miss three days of work per month due to her impairments, would there be any jobs?" (*Id.*) The vocational expert again answered "there would not be [any jobs] . . . [or] competitive employment on a full-time basis." (*Id.*) Matiya, who testified that she would need to be off task 30 percent of the time and miss at least three days of work per month, contends that ALJ Sanyon cherry-picked the testimony from the vocational expert that supported ALJ Sanyon's conclusion. *See Diaz* v. *Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("[A]n ALJ may not select and discuss only that evidence that favors [her] ultimate conclusion").

The court finds Matiya's argument unpersuasive. ALJ Sanyon did not discuss the two hypotheticals at issue here because, as stated in ALJ Sanyon's decision, the record did not support the limitations underlying the two hypotheticals. ALJ Sanyon concluded that Matiya retained the RFC to perform "light work" based on the medical findings in the record, the nature

and frequency of Matiya's treatments, and Matiya's daily activities. (R. at 19-20.) She specifically found that Matiya's testimony concerning greater limitations—such as her need to be "off task" 30 percent of the time and miss three days of work per month—was "not fully credible." (R. at 20.) The Seventh Circuit has held that an ALJ need not pose hypothetical questions based on limitations unsupported by the record. *See Schmidt* v. *Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that [the ALJ] accepts as credible.") An ALJ similarly need not discuss every piece of evidence that is inconsistent with the rest of the medical record, particularly evidence based on testimony the ALJ does not find credible. *See, e.g.*, *Pepper* v. *Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). It follows that ALJ Sanyon, having posed the two hypothetical questions that were based on limitations ALJ Sanyon later found to be not credible, did not need to discuss the two hypothetical questions in her summary of the vocational expert's testimony. Neither hypothetical question merited consideration because each started from a faulty premise, and ALJ Sanyon's discussion of Matiya's credibility (R. at 19-20) was sufficient to explain why ALJ Sanyon did not accept Matiya's stated need to be "off task" 30 percent of the time and miss three days of work per month. ALJ Sanyon's decision not to discuss the two hypothetical questions at issue here does not necessitate reversal.

## CONCLUSION

For the reasons explained above, the Commissioner's motion for summary judgment [26] is granted. The final decision of the Commissioner denying plaintiff Tina Mary Matiya disability benefits and supplemental social security income is affirmed. Civil case terminated.

ENTER:

JAMES F. HOLDERMAN
District Judge, United States District Court

Date: February 23, 2015